United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 5, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 04 - 50157
SUMMARY CALENDAR

_____

UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

        versus

ERIC SEAN WILEY,

                              Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 03-CR-229-ALL-SS

_____

Before JONES, SMITH and DeMOSS, Circuit Judges.

PER CURIAM:[1]

## I. FACTS AND PROCEEDINGS

    Eric Sean Wiley ("Wiley") appeals the district court's

denial of his motion to suppress and requests the Court to vacate

his guilty-plea conviction for possession of a firearm by a

felon, a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).   He

was sentenced to 36 months in prison and three years of

supervised release.

_____

    [1]Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

Wiley's plea agreement was conditioned on his ability to appeal the denial of his motion to suppress.  That motion sought to suppress the evidence that formed the basis of his conviction – the gun he was carrying when police officers stopped and frisked him in a restaurant parking lot in Austin, Texas following the commission of a crime to which the officers believed he was connected.  Wiley argued that the officers lacked reasonable suspicion to stop and frisk him.  The district court denied Wiley's motion, finding that the gun seized during the detention and frisk was legally obtained.  The Court agrees.

## II. STANDARD OF REVIEW

When "reviewing a district court's ruling on a motion to suppress, this Court accepts findings of fact unless clearly erroneous but reviews *de novo* the ultimate conclusion as to the constitutionality of the law-enforcement action." *United States v. Neufeld-Neufeld*, 338 F.3d 374, 378 (5th Cir. 2003); *United States v. Jacquinot*, 258 F.3d 423, 427 (5th Cir. 2001).  "A factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole." *Jacquinot*, 258 F.3d at 427.  This Court views the evidence in the light most favorable to the party that prevailed below.  *United States v. Laury*, 985 F.2d 1293, 1314 (5th Cir. 1993).

## III. DISCUSSION

Law enforcement officers "may stop and briefly detain an individual for investigative purposes if they have reasonable suspicion that criminal activity is afoot," even if they lack probable cause. *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)); *United States v. Sokolow*, 490 U.S. 1, 7 (1989). Reasonable suspicion must be supported by particular and articulable facts, which taken together with rational inferences from those facts, reasonably warrant an intrusion. *Goodson*, 202 F.3d at 736; *United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994)(en banc). The search requires "at least a minimum level of objective justification." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (citing *Terry*, 392 U.S. at 27). The court affords due weight to factual inferences and deductions drawn by law enforcement officers, which are based on their experience and specialized training. *United States v. Arvizu*, 534 U.S. 266, 273-74 (2002). Whether a stop and search is predicated on reasonable suspicion is determined by the totality of the circumstances. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *Neufeld-Neufeld*, 338 F.3d at 378. As such, "a collection of otherwise lawful conduct can amount to reasonable suspicion." *Neufeld-Neufeld*, 338 F.3d at 380 (citing *Arizu*, 534 U.S. at 277).

In this case, the testimony at the suppression hearing revealed that the arresting officers knew a criminal transaction involving a stolen car was about to occur in the restaurant parking lot and the principal suspect in that offense was a female identified as Brenda, who was communicating with the potential victim by cell phone in the minutes leading up to the crime. The officers testified that the restaurant was located in a high-crime area. The testimony also indicated that Wiley arrived at the restaurant parking lot only minutes before Brenda was due to arrive, that he emerged from his car speaking on a cell phone and looking around the parking lot, that he did not enter the restaurant, and that he rapidly attempted to leave the area when patrol units converged on Brenda's car. Also relevant to the officers' suspicion is the fact that, at the time of the arrest, they had been investigating a rash of robberies in the area in which female perpetrators lured illegal immigrants to certain areas where their male counterparts robbed the immigrants.[2] Given the totality of the circumstances, and based on their experience and specialized training, the police officers could have formed reasonable suspicion that Wiley was a lookout or enforcer for Brenda, or was otherwise involved in the criminal transaction. *See Arvizu*, 534 U.S. at 273; *Wardlow*, 528 U.S. at

---

[2] Although the government did not prove that the victim of the underlying criminal transaction was an illegal immigrant, the victim was of Mexican descent and did not speak English well.

4

124-25.  Therefore, the district court properly denied Wiley's motion to suppress.

The judgment of the district court is AFFIRMED.